IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRS SITE RD/RA GROUP, | ) | CASE NO. 1:13 CV 1516 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| ACME-CLEVELAND CORP., et al., | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Chemical Solvents, Inc. ("CSI") (Docket #264) and the Cross-Motion for Partial Summary Judgment Against Defendant Chemical Solvents, Inc. filed by Plaintiff, CRS Site RD/RA Group (Docket #270).

I.   **Factual Background.**

Plaintiff is a group of responsible parties ("the CRS Group") that have incurred costs to perform environmental response activities at the Chemical Recovery Systems Site ("the CRS Site") in Elyria, Ohio. The CRS Site was operated as a solvent reclamation business from approximately 1960 to 1980. During its operation, the CRS Site was used to reclaim spent organic solvents. These spent organics were spilled and seeped into soils in and around the CRS Site and leached into groundwater underneath the CRS Site. The United States Environmental Protection Agency ("EPA") conducted various "response" activities, as defined by Section 101(25) of the Comprehensive Environmental Response, Compensation and Liability Act of

1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), in response to the release or threat of release of hazardous substances at the CRS Site.

On May 19, 2002, a group of 24 potentially responsible parties ("PRPs"), including members of the CRS Group and others, entered into an Administrative Order by Consent with the EPA for the preparation of a Remedial Investigation/Feasibility Study of the CRS Site to examine various possible means to remedy the contamination at the CRS Site ("AOC RI/FS"). The AOC RI/FS identified numerous "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) in the soil, sediment and groundwater.

Based on the information collected, the EPA selected a remedy for the CRS Site in a Record of Decision ("ROD") that the EPA issued on October 30, 2007. The ROD required remediation of the groundwater via monitored natural attenuation with contingencies for active groundwater treatment options, removal of contaminated soil, closure of on-site structures, removal of on-site sump pumps, repairing a sewer line, and placing a clean soil cover over the entire CRS Site.

On May 4, 2010, the United States filed a Complaint under Sections 106, 107 and 113 of CERCLA against the CRS Group and other PRPs in *United States v. AK Steel Corp., et al.*, No. 1:10CV996.

On July 16, 2010, the EPA and the CRS Group, along with several non-performing settling defendants, entered into an RD/RA Consent Decree ("2010 RD/RA Consent Decree"), which required the CRS Group to pay certain EPA past response costs and to carry out the remedial design and remedial actions required by the ROD at the CRS Site.

As of the date of the Amended Complaint, the CRS Site Group had incurred approximately $5 million in response costs to perform various response cost activities at the CRS

Site. Plaintiff expected to continue to incur millions of additional dollars of response costs to perform the various response activities required in the 2010 RD/RA Consent Decree.

The CRS Group alleges that the Defendants in this case, including CSI, are liable under CERCLA, Section 113(f)(1), 42 U.S.C. § 9613(f)(1), for their respective equitable shares of all costs and damages incurred by the CRS Group, including applicable interest. The two Counts of the Amended Complaint are for: (1) Contribution under CERCLA (First Claim for Relief); and (2) Declaratory Relief Under CERCLA (Second Claim for Relief).

**II.     Motions for Summary Judgment.**

CSI filed its Motion for Summary Judgment on May 11, 2015. (Docket #264.) On June 10, 2016, the CRS Group filed its Cross-Motion for Partial Summary Judgment (Docket #270) and its Opposition to Motion for Summary Judgment and Memorandum in Support of Cross-Motion for Partial Summary Judgment (Docket #271). On July 9, 2015, CSI filed its Reply to Plaintiffs' Motion in Opposition to Summary Judgment and Opposition to Plaintiffs' Cross Motion for Summary Judgment. (Docket #274.) On July 20, 2015, the CRS Group filed its Reply Memorandum in Support of Cross-Motion for Partial Summary Judgment. (Docket #275.)

CSI initially argued in its Motion for Summary Judgment that it "has never owned or operated the subject CRS Site where hazardous substances are disposed in this lawsuit; has never arranged for the disposal or transport of hazardous substances to the CRS Site; and, has never generated hazardous substances that were disposed of at the CRS [S]ite." (Docket #264 at p. 3.) Then, in responsive briefing, CSI admitted that "a few documents . . . could arguably support the plaintiff's case against CSI" and appears to concede, although originally denying, that documents referenced by the CRS Group include reference to CSI. However, CSI argues that relevant deposition testimony indicates that CSI was not disposing of hazardous substances at the CRS

Site, but instead purchasing "new product for resale." CSI offers hypothesis as to what CSI's involvement at the CRS Site was, indicating that due to the passage of time it now has no direct knowledge regarding any transactions between CSI and the CRS Site, and states that even if there were a transaction between CSI and the CRS Site for which CSI could be liable, any liability "is *de minimus* at best." Finally, CSI argues that the action against CSI exceeds the applicable statute of limitations under 42 U.S.C. § 9613(g)(3) because it has been more than three years since the May 19, 2002 AOC RI/FS.

The CRS Group urges the Court to grant it partial summary judgment as to CSI's liability under CERCLA (with allocation of CSI's equitable share of response costs to be determined at a later time) on the basis that CSI has admitted liability to at least one disposal of waste containing hazardous substances at the CRS Site, regardless of size. Specifically, the CRS Group cites CSI's Reply Brief which reads, in pertinent part, as follows:

> Admittedly, a few documents, as initially identified in the CSI Motion for Summary Judgment, could arguably support the plaintiff's case against CSI.
>
> CRS may have sold CSI a product for its use similar to the new chemicals of resale CRS was purchasing from CSI.
>
> [D]uring the stated timeframe CSI did in fact sell toluene heptane blend.
>
> A transaction for $157.50 fits the plaintiffs' described transaction [that CSI sent "scrap solvent for reclamation" to the CRS Site] . . . The dollar amount indicated is so small in the scheme of 5.5 million gallons fo the chemicals Techlaw has associated with this site that it is difficult to explain . . . Nevertheless, needless to say, if this putative transaction is the basis of CSI liability than [sic] such liability is de minimis at best.

(Docket #274 at pp. 4-6.)

Further, the CRS Group argues that its claims against CSI are not barred by the applicable statute of limitations, as the Complaint in this case was filed on July 12, 2013, within three years of the 2010 RD/RA Consent Decree (dated July 16, 2010) from which it asserts its claims against

-4-

CSI arise.

### III. Summary Judgment Standard.

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. Determination of whether a dispute is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The nonmoving party may not simply rely on its pleadings, but must "produce evidence

-5-

that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

## IV. Discussion.

The Court has thoroughly and exhaustively reviewed the claims raised by the CRS Group; the Motion for Summary Judgment filed CSI; the Motion for Partial Summary Judgment filed by the CRS Group; and, the briefing responsive thereto, including all supporting documentation and a detailed examination of the case law relied on by the Parties.

Questions of material fact preclude summary judgment as to whether CSI is liable for the disposal of waste containing hazardous substances at the CRS Site. Although CSI initially argued that "Chemical Solvents," as listed in CRS Site documents, referred to some other entity, through its briefing CSI now agrees that it may be the correct entity. However, CSI, in large part, asserts that it has no way of knowing what transactions occurred and, therefore, offers hypotheticals as to what involvement CSI "may" have had with the CRS Site. While the CRS Group offers the deposition testimony of Carol Oliver, the Parties disagree as to what that deposition testimony proves. Thus, factual questions clearly persist as to whether and to what extent CSI is liable for activity related to the CRS Site.

CSI argues that the three-year statute of limitations period set forth in Section 113(g)(3) of CERCLA, 41 U.S.C. § 9613(g)(3), began to run on May 19, 2002, the date of the initial AOC

RI/FS and, therefore, that the claims raised by the CRS Group against CSI are time-barred. CSI asserts that the 2002 AOC RI/FS triggered the statute of limitations because it resolves some or all of the liability of the CRS Group; refers to CERCLA; and, provides contribution protection. However, "CERCLA specifically contemplates that parties will enter into multiple, partial settlements with the Government" and that "each settlement agreement may give rise to a separate claim for contribution." *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13 CV 115, 997 F. Supp. 2d 835, 848 (S.D. Ohio Feb. 18, 2014) ("*Hobart III*"). The Court in *Hobart III* reasoned that two separate settlements may "impose different obligations on Plaintiffs, giving rise to different response costs, and separate contribution claims, each with their own statute of limitations." *Id.* at 849. The CRS Group argues just that – that the contribution costs sought from CSI arise from the 2010 RD/RA Consent Decree, not the initial 2002 AOC RI/FS.

The 2002 AOC RI/FS entered into between the CRS Group and the EPA states that the objectives of the Parties in entering into the Order on Consent were (a) to determine the nature and extent of contamination; (b) to determine and evaluate alternatives for remedial action; and, (c) to recover oversight costs incurred by U.S. EPA with respect to this Consent Order. (Docket #271-1 at p.2.) Under the 2010 RD/RA Consent Decree, the stated objectives of the Parties were to (a) protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Performing Defendants; (b) to reimburse response costs of the U.S. EPA; and, (c) to resolve the claims of Plaintiff against the Settling Defendants and Settling Owner Defendant. (Case No. 1:10 CV 996, Docket # 8 at p. 7.) Therefore, while the 2002 AOC RI/FS was aimed at figuring out the extent of the problems at the CRS Site and determining what response actions would be necessary, the 2010 RD/RA Consent Decree was aimed at designing and implementing those response actions; settling liability as to

the costs of those response actions; and, resolving the claims of the parties thereto.

As set forth in *Hobart III*, separate claims could arise under the 2010 RD/RA Consent Decree.[1] The CRS Group asserts that the contribution claims raised against CSI arise out of the 2010 RD/RA Consent Decree and states that the "matters addressed" are "distinct and resolve distinct liabilities at the CRS Site." However, neither Party has provided sufficient detail to prove whether that is the case, leaving unresolved issues of fact. Accordingly, to the extent CSI argues that the statute of limitations has run on the CRS Groups' claims against it, summary judgment is also denied.

V. **Conclusion.**

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, Chemical Solvents, Inc. (Docket #264) and the Cross-Motion for Partial Summary Judgment Against Defendant Chemical Solvents, Inc. filed by Plaintiff, CRS Site RD/RA Group (Docket #270) are hereby DENIED.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: September 21, 2015

---

[1] It is also of note that Section XXIII of the 2010 RD/RA Consent Decree, entitled, "Effect of Settlement; Contribution Protection." Paragraph 109 states, "The Settling Defendants and Settling Owner Defendant agree that **with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree** they will notify the United States in writing no later than sixty (60) days prior to the initiation of such suit or claim." (Emphasis added.) The 2010 RD/RA Consent Decree, therefore, specifically references the possibility that claims for contribution may be brought by the CRS Group for contribution for matters related to the 2010 Consent Decree.